MAR 2 4 2026

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JESUS RAUDA-AVILA,<br>    a/k/a, "F,"<br>    a/k/a, "J,"<br>    a/k/a, "Marlboro Man,"<br><br>    *Defendant.* | No. 1:17-cr-147-LMB |

## STATEMENT OF FACTS

The United States and the defendant, JESUS RAUDA-AVILA (hereinafter, "the defendant"), agree that the following facts are true and correct and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1. Beginning in or around 2016 and continuing until on or about October 17, 2019, the exact dates being unknown, within the jurisdiction of this Court, the defendant, JESUS RAUDA-AVILA, a/k/a, "F," a/k/a "J," a/k/a "Marlboro Man," being first brought to the Eastern District of Virginia, knowingly and intentionally combined, conspired, confederated, and agreed with others both known and unknown, to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing and intending and having reasonable cause to believe that it would be imported into the United States in violation of Title 21, United States Code, Sections 959(a) and 963.

2.    During the course and in furtherance of the offense, the defendant personally distributed, or it was reasonably foreseeable to the defendant that his co-conspirators distributed 450 kilograms or more of cocaine (Base Level 38).

3.    The defendant is a Mexican national who has been involved in the illegal distribution of narcotics into the United States for years, primarily based out of Matamoras, Mexico.    In furtherance of his narcotics trafficking, the defendant sourced cocaine from multiple suppliers, including eventually co-defendant Marisela Flores-Torruco, and enlisted and led his own network of associates that assisted in the transportation of cocaine and proceeds.    The defendant began working with Flores-Torruco and her Mexico-based drug trafficking organization (hereafter, the "DTO") in or around 2016.

4.    The DTO directly trafficked cocaine, or caused cocaine to be trafficked, into Mexico with the ultimate goal of importing it into the United States, where its distribution would generate the highest profit.    The DTO had operations in New York City, New York, Houston, Texas, and McAllen, Texas, among other United States-based locations, to assist in moving cocaine and drug proceeds throughout the United States.

5.    The DTO relied on Colombian sources of supply and other Central American drug traffickers for its cocaine inventory.    The DTO provided logistical and financial support to coordinate the movement of multi-hundred-kilogram quantities of South American cocaine, valued at millions of U.S. dollars, through Central America, Mexico, and ultimately into the United States.    Individuals involved in or connected to the DTO included the defendant, co-defendants Flores-Torruco, Qiyun Chen, Jose Padilla-Flores, Alfonso Padilla-Flores, Jose Francisco Mendoza Gomez, and other unindicted co-conspirators.

6. During the conspiracy, the defendant and his co-conspirators relied on various forms of communication, which included BlackBerry PIN-to-PIN communications. The defendant commonly and routinely used the screen names "F," "J," and "Marlboro Man," on BlackBerry Messenger to communicate with his co-conspirators regarding the DTO's drug trafficking activities, which included, primarily, the movement, storage, and financing of shipments of cocaine.

7. Specifically, the defendant participated in the DTO by co-investing funds with Flores-Torruco to purchase multi-hundred-kilogram cocaine loads for the DTO and utilizing his associates, resources, and routes to coordinate the transport and importation of the DTO's cocaine into Mexico and the United States. In coordination with Flores-Torruco, the defendant arranged and directed the transportation of funds, drivers, and vehicles from northern Mexico to southern Mexico to purchase and pick up cocaine, which was subsequently transported into the United States for distribution. The defendant conducted at least ten such narcotics purchases with the DTO, each concerning between 100 and 400 kilograms of cocaine.

8. On or about April 21, 2017, approximately 971 kilograms of cocaine were seized in Panama. The 971 kilograms of cocaine originated from the DTO's Colombian source of supply. Flores-Torruco was in frequent contact with the Colombian source of supply around the time of the seizure.

9. Between on or about May 2–9, 2017, the defendant communicated with Flores-Torruco to arrange the transport of approximately $450,000 from northern Mexico to southern Mexico to pay the DTO's Colombian source of supply. The funds were intended to help cover a debt owed to the source of supply and to secure the DTO's possession of approximately 500

3

kilograms of cocaine to be distributed into the United States. The defendant agreed to send an associate of his to transport the $450,000 to Colombian source of supply's representatives.

10.    On or about May 10, 2017, approximately 500 kilograms of cocaine were seized in Panama. The 500 kilograms of cocaine originated from the DTO's Colombian source of supply. The DTO had purchased, with co-invested funds from the defendant, approximately 400 kilograms of the 500-kilogram seizure and planned to distribute the 400 kilograms into the United States.

11.    On or about May 29, 2017, the defendant met with Flores-Torruco, Jose Padilla-Flores, Qiyun Chen, and one of the DTO's Colombian sources of supply in Cancun, Mexico. The purpose of the meeting was to discuss cocaine shipments, quantities, and pricing. The meeting included discussion regarding the status of the 400-kilogram load that the DTO had purchased and which, unbeknownst to the individuals at the time, had been seized by law enforcement on or about May 10, 2017. The defendant negotiated additional cocaine deals with the DTO's Colombian source of supply at the meeting.

12.    Between on or about June 1–8, 2017, the defendant and Flores-Torruco communicated and coordinated the logistics, including the use of a specific truck for transportation and the transfer of funds between co-conspirators, of a 500-kilogram shipment of cocaine, for which the defendant contributed approximately $883,500.

13.    Between on or about June 10–21, 2017, the defendant and Flores-Torruco continued to coordinate cocaine shipments, the acquisition of vehicles for transportation, and arranging meetings for purposes of moving both money and cocaine.

14.    Collectively, from in and around 2016 through at least June 2017, the DTO conspired to distributed at least 1,900 kilograms of cocaine with the knowledge that it would ultimately be imported into the United States.

15.    On or about December 11, 2025, the defendant was extradited from Mexico and was first brought to Washington Dulles International Airport, located within the Eastern District of Virginia, where he was subsequently arrested by the Drug Enforcement Administration.  His co-defendants and joint offenders, Flores-Torruco and Mendoza Gomez, were previously first brought to and arrested in the Eastern District of Virginia.  The defendant agrees that venue is proper in the Eastern District of Virginia pursuant to 18 U.S.C. § 3238.

16.    This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the United States.  It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.  The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

*(Continued on next page.)*

17.    This Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether it is presented to or accepted by a court.    The defendant waives any rights that he may have under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the United States constitution, and any federal statute or rule in objecting to the admissibility of this Statement of Facts in any such proceeding.

Respectfully submitted,

Todd W. Blanche
Deputy Attorney General

Date: _____    By: _____

Christopher M. Carter
Edgardo J. Rodriguez
Assistant United States Attorneys

Caylee E. Campbell
Trial Attorney
Money Laundering, Narcotics and Forfeiture Section
Department of Justice

6

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, JESUS RAUDA-AVILA, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
JESUS RAUDA-AVILA

I am Elita C. Amato, the defendant's attorney. I have carefully reviewed the above Statement of Facts with the defendant. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
ELITA C. AMATO
Attorney for the Defendant