IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:17-cr-147-6 |
| v. | Hon. Leonie M. Brinkema |
| JESUS RAUDA-AVILA,<br>a/k/a "F,"<br>a/k/a "J,"<br>a/k/a "Marlboro Man," | Sentencing Date: June 16, 2026 |
| *Defendant*. | |

## UNITED STATES' POSITION ON SENTENCING

The defendant, Jesus Rauda-Avila, was a years-long narcotics trafficker who ran his own drug trafficking organization ("DTO").  In approximately 2016, the defendant began a partnership with Marisela Flores-Torruco, herself a significant narcotics trafficker with a DTO of her own. Together, the defendant and Flores-Torruco, as the leaders of their respective DTOs, co-invested in hundreds of kilograms of cocaine at a time for collective distribution into the United States.  The defendant used his own DTO to assist in importing that cocaine into the United States.

This partnership was massively successful in the short time it existed.  Over the course of approximately one year, the defendant and Flores-Torruco conspired to distribute approximately 1,900 kilograms of cocaine—valued at tens of millions of dollars—into the United States.  The Court has already sentenced Flores-Torruco to 200 months' imprisonment in this case.  *See United States v. Marisela Flores-Torruco*, 1:17-cr-147-1, ECF No. 98 (E.D. Va. Jan. 30, 2019).  The defendant's leadership role in his organization and his role as a partner to Flores-Torruco merit an identical period of incarceration that will hold him personally accountable for his conduct and deter others from committing like offenses.  Therefore, the United States submits that a period of

200 months' imprisonment is sufficient, but not greater than necessary, to account for the sentencing factors in 18 U.S.C. § 3553(a).

## I.    BACKGROUND

The conduct in this case originated in the early to mid-2010s. Around that time, Flores-Torruco and Jose Francisco Mendoza-Gomez, two romantic partners, started working together to acquire cocaine and distribute it into the United States. Working with Flores-Torruco and Mendoza-Gomez were Flores-Torruco's two children from a prior relationship, Alfonso and Jose Padilla-Flores. Together, these four individuals comprised the core of Flores-Torruco's DTO. United States' Position on Sentencing, *United States v. Jose Francisco Mendoza-Gomez*, No. 1:17-cr-147, ECF No. 242, at 2 (E.D. Va. Feb. 10, 2026) [hereinafter "Mendoza Gomez Position"].

Separately from Flores-Torruco's DTO, the defendant was a long-time narcotics trafficker himself, running his own DTO primarily out of Matamoros, Mexico, a border town directly across the United States-Mexico border from Brownsville, Texas, a prominent drug trafficking port of entry. PSR ¶ 17. The defendant recruited and ran his own network of associates that, under his leadership, transported cocaine into and proceeds out of the United States. *Id.* ¶ 22. The defendant's primary method of drug transportation was through vehicles driven by individuals paid to smuggle cocaine across the United States-Mexico border. *Id.* ¶ 17.

The paths of these two DTOs crossed around 2016. By this time, the Flores-Torruco DTO had established a robust network of cocaine suppliers it used to supply its operations, as well as an international distribution operation. *See* PSR ¶¶ 16, 23–24 (detailing aspects of the operation). Once the defendant crossed paths with the Flores-Torruco, each saw an opportunity to expand their respective operations through a partnership. The defendant provided funds to co-invest, alongside Flores-Torruco, in regular, large shipments of cocaine measuring in hundreds of kilograms each.

2

*Id.* ¶¶ 16, 26, 28–31.  The defendant, already proficient in shipping cocaine across the United States-Mexico border, utilized his transportation network to assist in shipping the partnership's cocaine into the United States.  *Id.* ¶¶ 17, 26.

Leading a transportation network importing cocaine into the United States required the defendant to coordinate with the "plaza bosses" in northern Mexico.  "Plazas" are zones typically used as narcotics supply and trafficking routes and are often controlled by various cartels.[1]  Historically, the Gulf Cartel has controlled the areas of Mexico around Matamoros, the defendant's historic base of operations.[2]

The partnership had the potential to be massively lucrative for both the defendant and Flores-Torruco.  For instance, during the BlackBerry monitoring period in the case (approximately March–July 2017), in which the defendant and his co-conspirators relied on BlackBerry Messenger to communicate regarding drug trafficking activities, both DTOs conspired to distribute a conservative minimum of 1,900 kilograms, or approximately 4,222 pounds, of cocaine into the United States.  PSR ¶ 33.  At the time, a kilogram of cocaine could sell for around $28,000–$32,000 on the street in the United States.  Based on those prices, the DTO conspired to distribute anywhere from around $53.2–$60.8 million in just a five-month period.  Additionally, the defendant, through Flores-Torruco's connections, was able to meet with Flores-Torruco's main Colombian supplier, through which the defendant and the Colombian supplier reached an

---

[1] *See, e.g.*, Grayson, George, W., *Los Zetas: The Ruthless Army Spawned by a Mexican Drug Cartel*, Foreign Policy Research Institute, May 2008, https://web.archive.org/web/20120812211753/http://www.fpri.org/enotes/200805.grayson.loszet as.html (last accessed Jun. 7, 2026).

[2] *See, e.g.*, *Gulf Cartel*, InSight Crime, https://insightcrime.org/mexico-organized-crime-news/gulf-cartel-profile/ (last accessed Jun. 7, 2026).

agreement to conduct separate cocaine distributions with each other.  *Id.* ¶ 30.

However, the true promise of this partnership was eventually thwarted by law enforcement intervention.  Flores-Torruco was arrested in the fall of 2017.  The defendant was later arrested in February 2024 in Mexico and was extradited to the United States in December 2025.  PSR ¶ 3. The defendant was arraigned on the Superseding Indictment in the Eastern District of Virginia on December 16, 2025.  *Id.* ¶ 4.  On March 24, 2026, the defendant appeared before the Court and pled guilty to the Superseding Indictment.  *Id.* ¶ 5.  Sentencing was set for June 16, 2026.  *Id.*

## II.    STANDARDS GOVERNING SENTENCING

Although the Supreme Court rendered the U.S. Sentencing Guidelines advisory in *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court still must "consult those Guidelines and take them into account when sentencing." *Id*. at 264.  "[A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines.  Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

When imposing a sentence that is "sufficient, but not greater than necessary," Section 3553 requires a sentencing court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the Guidelines; (5) applicable policy statements issued by the Sentencing Commission; (6) the

need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense.

## III.    GUIDELINES CALCULATIONS

In accordance with U.S.S.G. § 6A1.2 and Policy Statements and this Court's policy regarding Guidelines sentencing, the United States has reviewed the Probation Office's PSR prepared in this matter.  Per the plea agreement, the Base Offense Level was correctly calculated at 38, as the offense involved more than 450 kilograms of cocaine.  PSR ¶ 46.  The Probation also correctly applies the two-point enhancement for the defendant being leader/organizer of the criminal activity.  *Id.* ¶¶ 42, 47.

The United States brings to the Court's attention an objection which was missed during the drafting of the PSR in this case: application of the two-point enhancement under U.S.S.G. § 2D1.1(b)(16)(C).  The Guidelines section states that if a defendant is given a role enhancement under § 3B1.1 and the defendant was directly involved in the importation of a controlled substance, an additional two-point increase is warranted.  U.S.S.G. § 2D1.1(b)(16)(C).  The defendant was correctly assessed a two-point role enhancement under § 3B1.1 and, as agreed upon in the Statement of Facts, the defendant was directly involved in the importation of cocaine into the United States.  Therefore, an additional two-point enhancement under § 2D1.1(b)(16)(C) should apply.

The defendant was properly assessed a two-point reduction for acceptance of responsibility per U.S.S.G. § 3E1.1(a).  PSR ¶ 53.  The United States also moves at this time for an additional one-point reduction per U.S.S.G. § 3E1.1(b), which is already incorporated into the Probation Officer's calculations.  *Id.* ¶ 54.

After taking into account the defendant's Base Offense Level and the adjustments above, the defendant should be assessed a Total Offense Level of 39. With a properly assessed criminal history category of I, the appropriate Guidelines range in this case is 262–327 months.

IV.    **THE DEFENDANT'S INDEPENDENT TRAFFICKING OPERATIONS AND LEADERSHIP ROLE WARRANT A SENTENCE OF 200 MONTHS BASED UPON ALL OF THE SECTION 3553(a) FACTORS**

The defendant's conduct warrants a sentence of 200 months, an equal sentence to his partner and co-defendant, Flores-Torruco. The defendant conducted his own drug trafficking operations, partnering with a peer, Flores-Torruco, for the benefit of their respective operations. The defendant was the leader of his DTO, investing in cocaine loads, meeting with sources of supply, and directing his associates in their distribution activities. The defendant's age and history as a narcotics trafficker before the instant offense present no compelling mitigation. Due to the current record-breaking, global cocaine surge happening, deterrence factors regarding cocaine distribution are particularly relevant. Finally, a 200-month sentence recognizes the defendant's role in the offense and compares well to other sentences for similar defendants, primarily Flores-Torruco.

A.    **Nature and Seriousness of the Offense**

The nature and seriousness of the offense strongly supports a 200-month sentence in this case. The defendant was involved in a conspiracy, international in scope, to distribute literal tons of cocaine from South America into the United States through the United States-Mexico border. Just from the few months of Title III electronic surveillance in this case, law enforcement was able to attribute a minimum of 1,900 kilograms of cocaine to the conspiracy. This is likely a conservative estimate, as the conspiracy was in business for much longer than the approximate five-month timeframe captured by the intercepts in this case.

6

The defendant played a central leadership role in this offense. In coordination with Flores-Torruco, the defendant arranged and directed the transportation of funds, drivers, and vehicles from northern Mexico to southern Mexico to purchase and pick up cocaine, which was subsequently transported into the United States for distribution. The defendant conducted at least ten such narcotics purchases in partnership with Flores-Torruco's DTO, each involving between 100 and 400 kilograms of cocaine.

In narcotics distribution cases, it is critical to conceptualize the scale of the drug offense at hand. While hard to measure, some authorities have estimated the average "snorted" dose of cocaine to be 100 to 200 milligrams.[3] Using the more conservative estimate of 200 milligrams per dose, the defendant in this case conspired to distribute the equivalent of nearly 9.5 million doses of cocaine (1,900 kilograms x 1,000,000 milligrams per kilogram / 200 milligrams per dose) into the United States during the charged period alone. According to the most recent Census estimate, New York City had a population of approximately 8.5 million people in 2024.[4] The staggering reality of the instant case is that, over just a five-month period, the DTO conspired to distribute enough cocaine to put a dose in the hands of every man, woman, and child in New York City *AND* Washington, D.C., based on the most recent Census estimate from 2024.[5]

To successfully carry out his narcotics trafficking, the defendant must have coordinated with cartel "plaza bosses," particularly in northern Mexico. At a minimum, the defendant, who

---

[3] *See*, *e.g.*, *Cocaine, Information for Health Professionals*, Alberta Health Services, https://crismprairies.ca/wp-content/uploads/2018/12/Cocaine_V02_2018-11-13.pdf (last accessed Jun. 7, 2026).

[4] *List of the Largest U.S. Cities by Population*, Britannica, https://www.britannica.com/topic/Whats-the-largest-US-city-by-population (last accessed Jun. 8, 2026).

[5] *Id.*

functioned independently of the cartels, would have needed permission from the cartels to transport cocaine through its territories in northern Mexico into the United States, further entrenching these groups which are well known to cause violence and exploit vulnerable populations.

The defendant was a major participant in all aspects of this offense. As correctly noted in the PSR, the defendant ran his own DTO, partnering with Flores-Torruco and her DTO from about 2016 through the summer/early fall of 2017. The defendant provided funds and an established trafficking network into the United States using his prior trafficking contacts and expertise in the Matamoros area. The defendant was even able to negotiate cocaine deals with Colombian sources of supply he met through Flores-Torruco, giving him the potential to expand his own DTO independently of Flores-Torruco's operation. A 200-month sentence would acknowledge the reality of the defendant's leadership role in such a vast conspiracy.

### B. History and Characteristics of the Defendant

The defendant is a long-time narcotics trafficker, specifically importing narcotics into the United States from northern Mexico. PSR ¶ 17. He grew up in a large, working family. *Id.* ¶ 64–65. After high school, the defendant went to work in various legitimate jobs, primarily as a cattle rancher. *Id.* ¶¶ 65, 73. At the time of the instant offense, the defendant was in his mid/late-30s. *See* PSR at 2. The defendant has no significant substance abuse, emotional, or mental conditions. *Id.* ¶¶ 68–70.

While the realities of living in Mexico are certainly different than those in the United States, the picture of the defendant painted by the PSR is one of a man in his 30s who willfully engaged in significant criminal behavior. Considering the defendant's honest employment leading up to these offenses, PSR ¶ 73, the defendant committed these crimes out of greed. The defendant

presents no mitigating factors that might warrant a sentence lower than 200 months in this case.

###   C.     Just Punishment and Deterrence

The § 3553(a) factors of just punishment and deterrence are also significant factors in this case.  As explained, the scale of the offense is truly staggering.  It is impossible to know the full scope of the effects and ramifications the defendant's conduct had on the United States.  It should not be forgotten that, while there are more dangerous drugs in circulation today, cocaine is still dangerous itself.  The psychological and physiological effects of cocaine on an individual are well-established.[6]  Cocaine can cause serious addiction, ruin lives, and lead to death.  In fact, the United States has seen an increased in stimulant-involved deaths without opioid co-involvement in recent years, with cocaine-related deaths estimated at approximately 30,000 in 2023, the most recent year with complete data.[7]

The defendant was a man in his mid-30s when he committed the instant offense.  His criminal conduct was not the result of youthful indiscretion sometimes heard as an explanation by defendants in this Court.  Nor does the defendant have any serious addiction issues or mental/emotional conditions that may offer some explanation.  Frankly, the defendant is a long-time narcotics trafficker who presumably would have kept trafficking absent law enforcement intervention.

Finally, general deterrence principles are especially important in this case.  At this moment

---

[6] Cocaine has long been known to cause psychological issues and has a widespread, negative impact on multiple organs of the body. *See What Are the Long-Term Effects of Cocaine Use*, National Institute on Drug Abuse, https://nida.nih.gov/publications/research-reports/cocaine/what-are-long-term-effects-cocaine-use (last accessed Jun. 7, 2026).

[7] Rosalsky, Greg, *The Record-Breaking Cocaine Boom—And Its Deadly Fallout*, NPR, https://www.npr.org/sections/planet-money/2026/02/17/g-s1-110042/the-record-breaking-cocaine-boom-and-its-deadly-fallout (last accessed Jun. 7, 2026).

in history, the entire globe is facing what some sources are referring to as a record-breaking surge in cocaine.[8]  Consistent with this trend, the United States is experiencing a strong demand and serious influx of cocaine coming into the United States.  In fiscal year 2024, Customs and Border Protection officials seized over 68,000 pounds of cocaine.[9]  Due to increased enforcement operations, the United States Coast Guard seized over 240,000 pounds of cocaine *in the first half of 2025 alone*.[10]

The Court is therefore faced with a massive, resurging problem regarding cocaine distribution across the country that it likely has not faced since the heyday of cocaine in the 1980s. Deterrence considerations should be tailored to problems as they exist at the time of sentencing. Given this renewed surge of cocaine importation, a 200-month sentence would provide a just punishment and necessary deterrent effect towards the defendant and other similarly situated individuals.

### D.    Unwarranted Sentencing Disparities

Finally, a sentence of 200 months, which incorporates a 62-month downward variance from the low end of the applicable Guidelines range, maintains consistency in sentencing.  The defendant's position within the conspiracy is the most comparable to Flores-Torruco's position. As stressed above, the defendant's relationship with Flores-Torruco was a partnership.  They co-

---

[8] *See*, *e.g.*, *Global Cocaine Boom Keeps Setting New Records, UN Report Says*, Reuters, https://www.reuters.com/world/americas/global-cocaine-boom-keeps-setting-new-records-un-report-says-2025-06-26/ (last accessed Jun. 7, 2026).

[9] U.S. Customs and Border Protection, *Drug Seizure Statistics*, https://www.cbp.gov/newsroom/stats/drug-seizure-statistics (last accessed Jun. 7, 2026).

[10] United States Coast Guard, Coast Guard Seizes Over 240,000 Pounds of Cocaine, Doubling Amount Interdicted Over Previous Year, https://www.dhs.gov/news/2025/07/15/coast-guard-seizes-over-240000-pounds-cocaine-doubling-amount-interdicted-over (last accessed Jun. 7, 2026).

invested money in hundreds of kilograms of cocaine at a time. The defendant offered up his own DTO to assist in importing cocaine into the United States. Both met with Flores-Torruco's Colombian supplier to discuss further transactions together. Both had historic drug trafficking conduct in Mexico. The evidence demonstrates they had a comparable backgrounds and partnered together in the instant conspiracy on equal footing. Therefore, they should be treated consistently for sentencing purposes. Flores-Torruco, the DTO leader and organizer during the defendant's offense conduct, was sentenced to 200 months' imprisonment for her role in this conspiracy. To avoid an unwarranted sentencing disparity between co-defendants with similar culpability, the United States submits that a below-Guidelines sentence of 200 months is warranted for this particular defendant.

The defendant may argue that the violence and bribery aspects of Flores-Torruco's DTO make her conduct more culpable under the § 3553(a) analysis. The Court is familiar with these characteristics of the Flores-Torruco DTO based on representations made in the sentencing of co-defendant Mendoza Gomez. *See* Mendoza Gomez Position at 4–5. However, these facts were not presented to the Court in the sentencing materials for Flores-Torruco. *See generally* Defendant's Position on Sentencing, *United States v. Marisela Flores-Torruco*, 1:17-cr-147-1, ECF No. 93 (E.D. Va. Jan. 30, 2019); Position of the United States with Respect to Sentencing, *United States v. Marisela Flores-Torruco*, 1:17-cr-147-1, ECF No. 90 (E.D. Va. Jan. 28, 2019). The United States is not aware that such factors were considered in imposing the 200-month sentence for Flores-Torruco. Therefore, the Court's 200-month sentence for Flores-Torruco was seemingly imposed without consideration of these characteristics and possibly would have garnered a higher sentence if presented.

There is no evidence that the defendant was aware of these characteristics of Flores-

11

Torruco's DTO, much less participated in them. The United States's sentencing recommendation takes this into account, considering the Court seemingly sentenced Flores-Torruco without considering these characteristics. Therefore, there is no reason to treat the defendant and Flores-Torruco differently, which would create an unwarranted sentencing disparity between Flores-Torruco and the defendant.

## V.    CONCLUSION

For the foregoing reasons, the United States respectfully submits that a sentence of 200 months' imprisonment is sufficient, and not greater than necessary, to satisfy the sentencing factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Todd W. Blanche
Acting Attorney General


Date:    June 9, 2026                By:    _____/s/_____

Christopher M. Carter
Edgardo J. Rodriguez
Assistant United States Attorneys
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3947
Fax: (703) 299-3980
Christopher.carter2@usdoj.gov

Chelsea Rooney
Trial Attorney
Money Laundering, Narcotics & Forfeiture Section
U.S. Department of Justice

## **CERTIFICATE OF SERVICE**

I certify that on June 9, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.  I also certify that an electronic copy was emailed to the Probation Office at:

Jennifer Lyerly
United States Probation Officer
401 Courthouse Square, 3rd Floor
Alexandria, Virginia 22314
jennifer_lyerly@vaep.uscourts.gov

By:     _____/s/_____
                Christopher M. Carter
                Assistant United States Attorney